IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  02-3144 |
| | ) | |
| STEPHEN L. BICKEL, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter came before the Court on January 13, 2006, for bench trial. The United States appeared by Assistant United States Attorney Elizabeth L. Collins. Defendant Stephen L. Bickel appeared by his attorney Michael J. Costello. The United States seeks damages and penalties from Bickel for violation of the False Claims Act (Act) for submitting false claims for Medicare and Medicaid payments. 31 U.S.C. § 3729(a). The parties submitted a Joint Statement and Stipulation (d/e 27), setting forth the undisputed facts prior to trial. Prior to hearing, the Defendant also filed a Motion to Dismiss Complaint (d/e 28) and a Motion for Payment of Unsecured Creditor (Victim) from Sequestered Funds of the Defendant (d/e

1

30). For the reasons set forth below, the Court denies the Defendant's Motions and enters judgment in favor of the United States and against Defendant Stephen L. Bickel. The following constitutes findings of fact and conclusions of law. Fed. R. Civ. P. 52(a).

## FINDINGS OF FACTS

The parties stipulated to the following uncontested facts:

1. Bickel knowingly submitted, within the Central District of Illinois, for Medicaid payment, 1,421 false claims for urine quantitative tests (CPT 82042) which were claimed to have been performed between June 3, 1996, and September 11, 2001, but were never performed, and Medicaid paid $8,886.43 for those claims.

2. Bickel knowingly submitted, within the Central District of Illinois, for Medicare payment, 14,346 false claims for urine quantitative tests (CPT 82042) which were claimed to have been performed between June 1, 1996, and May 12, 2000, but were never performed, and Medicaid paid $92,180.61 for those claims.

3. Bickel knowingly submitted, within the Central District of Illinois, for Medicaid payment, 3,693 false claims for reticulocyte count tests (CPT 85044) which were claimed to have been performed between

June 8, 1996, and February 8, 2002, but were never performed, and Medicaid paid $13,239.10 for those claims; however, the parties agree that the amount of liability for single damages for the stipulated facts set forth in this paragraph is $13,049.99.

    4.    Bickel knowingly submitted, within the Central District of Illinois, for Medicare payment, 13,489 false claims for reticulocyte count tests (CPT 85044) which were claimed to have been performed between June 3, 1996, and May 11, 2000, but were never performed, and Medicaid paid $70,305.10 for those claims.

Joint Statement and Stipulation at 1-2.

The United States also brought criminal charges against Bickel arising out of the false billings that he submitted to Medicare and Medicaid. United States v. Bickel, Case No. 02-30102. On October 10, 2003, Bickel pleaded guilty to two counts of mail fraud. 18 U.S.C. § 1341. On August 19, 2004, this Court entered judgment in the criminal case against Bickel. The Court sentenced Bickel to 60 months imprisonment and ordered him to pay restitution in the sum of $2,521,577.42, with interest. United States v. Bickel, Case No. 02-30102, Judgment in Criminal Case (criminal d/e 133).

## CONCLUSIONS OF LAW

A.  LIABILITY

Bickel is liable to the United States for violation of the Act. Because Bickel has been convicted of mail fraud based on the same transactions, he is estopped from denying the essential elements of the United States' claim under the Act. 31 U.S.C. § 3731(d). Furthermore, Bickel has stipulated to facts that establish liability. The Act states that anyone who knowingly presents a false claim for payment to an officer or employee of the United States is liable to the United States for "a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . ." 31 U.S.C. § 3729(a). Bickel stipulates that he did just this 32,949 times. He is liable for violation of the Act.

Bickel argues in his Motion to Dismiss that the judgment in the criminal proceeding bars this proceeding under the doctrines of res judicata, collateral estoppel, and stare decisis. These doctrines are analyzed under double jeopardy principles in criminal cases. Kennedy v. Washington, 986 F.2d 1129, 1133 (7th Cir. 1993) ("[D]ouble jeopardy is the criminal counterpart of the civil doctrine of res judicata, of which the principle of

4

collateral estoppel is a part."). The Double Jeopardy Clause of the Constitution precludes a subsequent civil action after criminal conviction if the civil action is "'so punitive in purpose or effect' as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty,'" Hudson v. United States, 522 U.S. 93, 100 (1997)(quoting United States v. Ward, 448 U.S. 242, 248-49 (1980) and Rex Trailer Co. v. United States, 350 U.S. 148, 154 (1956)) (internal citation omitted).

The Supreme Court has identified seven factors to weigh in determining whether a subsequent civil action should be considered a second criminal proceeding in violation of the Double Jeopardy Clause: (1) whether the subsequent action involves an affirmative disability or restraint; (2) whether the subsequent action historically has been regarded as a punishment; (3) whether the subsequent action comes into play only after a finding of scienter; (4) whether the subsequent action's operation will promote the traditional aims of punishment and deterrence; (5) whether the behavior to which the subsequent action applies is already a claim; (6) whether an alternative purpose to which the subsequent action may rationally be connected is assignable for it; and (7) whether the consequences imposed by the subsequent action appear excessive in relation

to the alternative purposes assigned. <u>Hudson</u>, 522 U.S. at 99-100. The Court must consider these factors in relation to the stated Congressional intent in the statute, "'[O]nly the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." <u>Id.</u> at 100 (quoting <u>Ward</u>, 448 U.S. at 249).

The Act manifests a Congressional intent to impose civil liability for stealing from the United States. 31 U.S.C. § 3729(a). The factors listed by the Supreme Court do not demonstrate the "clearest proof" necessary to override that intent. Some factors indicate that Congress created a criminal penalty: the Act requires a level of <u>scienter</u> because the false claim must be filed knowingly. 31 U.S.C. § 3729(a). Other factors, however, indicate that Congress intended to establish a civil remedy. The Act is rationally related to the alternate goal of compensating the United States for the losses incurred due to the defendant's false claims. The remedies under the Act do not impose any disability or restraint. Making a false statement to a federal official is already a crime. 18 U.S.C. § 1001. The single damage portion of the award is clearly compensatory. The civil penalties and treble damages are punitive. <u>Id.</u> at 105; <u>Vermont Agency of Natural Resources v. U.S. ex rel. Stevens</u>, 529 U.S. 765, 784 (2000). Monetary penalties,

6

however, have traditionally been considered civil in nature. <u>Hudson</u>, 522 U.S. at 104. Moreover, civil remedies may serve the punitive purpose of deterrence and still retain their civil character. <u>Id.</u> at 105. Given that several factors support the conclusion that Congress intended a civil remedy, the Court does not find that "the clearest proof" exists to override the stated Congressional intent. The Act, thus, is a civil remedy. The Government's action is not barred by the prior criminal proceeding.

B.   <u>DAMAGES</u>

The Act requires the Court to impose treble damages and civil penalties of $5,000.00 to $10,000.00 per violation. 31 U.S.C. § 3729(a). The amount of civil penalties has been adjusted for inflation. <u>Federal Civil Penalties Inflation Adjustment Act of 1990</u>, Pub. L. 101-4 10, § 5,104 Stat. A 91, note following 28 U.S.C. § 2461. The Act's civil penalty range currently is $5,500.00 to $11,000.00. 28 C.F.R. § 85.3(a)(9) (2005). According to the stipulated facts, Bickel submitted 32,949 false claims, and the United States suffered actual damages of $184,422.13. Treble damages would be $553,266.39. The minimum statutory civil penalty would total $181,219,500.00 ($5,500.00 for each of the 32,949 false claim submitted). The United States, however, only seeks civil penalties of $11,000.00. The

7

United States takes the position that the full statutory civil penalty would violate the Excessive Fines Clause. Bickel argues that any judgment violates the Excessive Fines Clause in light of the $2,521,577.42 in restitution already ordered in the criminal case.

The award of treble damages and the civil penalty of $11,000.00, proposed by the United States, do not violate the Excessive Fines Clause. The Excessive Fines Clause prohibits the imposition of a disproportionately large fine. U.S. Const. amend. VIII. A fine is excessive if: (1) the payment is punitive in nature; and (2) the amount is grossly disproportionate to the gravity of the defendant's offense. United States v. Bajakajian, 524 U.S. 321, 327-28 (1998). The Excessive Fines Clause applies in civil matters such as this when the awards have a punitive character. Hudson, 522 U.S. at 103.

A treble damage award of $553,266.39 and the proposed civil penalty of $11,000.00 are not grossly disproportionate to the gravity of the offense. Bickel engaged in a massive scheme that defrauded the United States of millions of dollars. The $2,521,577.42 restitution award in the criminal proceeding reflects the gravity of his offense. The single damage portion of the treble damage award, in the amount of $184,422.13, is purely

8

compensatory and not a fine at all. The United States agrees that this portion of the award may only be recovered once, either through the criminal restitution judgment or the judgment in this case. The remaining $368,844.26 of the treble damage award is not a grossly disproportionate amount, given the multimillion dollar fraud found in the criminal proceeding. Similarly, the requested $11,000.00 civil penalty is modest compared to the extent of the fraud. The United States' requested remedy does not violate the Excessive Fines Clause. Bickel's arguments to the contrary in his Motion to Dismiss are not persuasive.

## MOTION TO PAY CREDITOR

Bickel asks the Court to order the payment of an unsecured creditor Illini Reproductions. Motion for Payment to Unsecured Creditor (Victim) from Sequestered Funds of the Defendant (d/e 30). Bickel made this same request twice in his criminal proceeding, and the Court denied those requests. United States v. Bickel, Case No. 02-30102, Order entered April 14, 2004 (criminal d/e 116). Nothing in the new request persuades the Court to change its decision. Illini Reproductions is one of Bickel's unsecured creditors; it seeks payment for services rendered for reproducing documents. Illini Reproductions was not a victim of Bickel's fraud; it did

9

not pay any false claims for reimbursement of unperformed medical tests. Illini Reproductions should pursue its available remedies for payment under state law. Bickel presents no reason to give Illini Reproductions a preferred position for payment ahead of the United States or any other creditor. The Motion is denied.

THEREFORE, Defendant's Motion to Dismiss Complaint (d/e 28) and Motion for Payment to Unsecured Creditor (Victim) from Sequestered Funds of the Defendant (d/e 30) are DENIED. Judgment is entered in favor of the United States and against Stephen L. Bickel in the sum of $564,266.39, consisting of a fine of $11,000.00 and treble damages of $553,266.39 (three times the actual damages of $184,422.13), plus allowable costs.

IT IS THEREFORE SO ORDERED.

ENTER: February 22, 2006.

      FOR THE COURT:

                                  s/ Jeanne E. Scott
                                  JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE